[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 776 
This is an FELA case. Plaintiff/appellee John H. Roberts, an engineer for Southern Railway Company, was injured on February 23, 1975, when the train he was operating derailed near Old Fort, North Carolina. The track slopes downhill at that point and curves sharply. It was super-elevated to a height of one inch. A seven-foot section of broken rail was found at the site of the accident. Whether the rail was cause or effect of the accident was an issue at trial. Evidence introduced at trial tended to establish that the train was exceeding the speed limit at the time the accident occurred.
A formal investigation of the accident resulted in Roberts's discharge for operating the train in excess of the speed limit. His dismissal was upheld by the Railway Adjustment Board. He then filed this action against Southern Railway Company, alleging that his injuries had been caused in whole or in part by Southern's negligence. Southern filed a third-party complaint against U.S. Steel, the manufacturer of the allegedly defective rail. U.S. Steel and Southern both moved for summary judgment. U.S. Steel's motion was granted; Southern's overruled. After a trial on the merits, a jury awarded Roberts $100,000. Southern filed a motion for a new trial, which was denied. This appeal followed.
Southern contends that it is entitled to a new trial for the following reasons: 1) The jury was prejudiced by the cumulative effect of statements made by Roberts's counsel regarding Roberts's poverty and the unfair treatment he received from the railroad, the destruction of the allegedly defective rail after testing by Southern, a request that the trial judge control the courtroom, and references to plaintiff's decreased earning capacity; 2) the verdict was excessive and indicated bias, passion and prejudice against the defendant railroad on the part of the jury; 3) the trial court erred in admitting statements made by Roberts to an examining physician who later testified at trial; and 4) the trial court erred in admitting a statement made by Roberts to the secretary of his treating physician and recorded on Southern's own injury reporting form. Southern also contends that the trial court erred in overruling Southern's motion for a directed verdict because the plaintiff did not carry his burden of proving by substantial evidence that Southern was guilty of negligence, and that the trial court's action in overruling Southern's motion for summary judgment was inconsistent with its granting of U.S. Steel's motion for summary judgment because both motions were based on the same proof. For the reasons discussed herein we affirm.
What constitutes negligence for the purposes of the Federal Employers Liability Act is a federal question, and federal decisional law formulating and applying the concept governs.Urie v. Thompson, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027,93 L.Ed. 1282, 1295 (1949). The "slight negligence" necessary to support an FELA action is defined as a failure to exercise great care and that burden of proof is much less than the burden required to sustain recovery in ordinary negligence actions. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969).
Where a jury verdict has been reached in an FELA case, the reviewing court's role is limited to ascertaining whether
 ". . . the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the *Page 777 
proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due `in whole or in part'
to its negligence. (Emphasis added.)" Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506-507, 77 S.Ct. 443, 448-449, 1 L.Ed.2d 493, 499-500 (1957).
The congressional intent in enacting the FELA was to secure jury determinations in a larger proportion of cases than would be true of ordinary common-law actions. Boeing Company v.Shipman, supra, p. 371. Where a case under the FELA turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury. Ellis v. Union Pacific R. Co.,329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572 (1947).
The Act itself provides that:
 "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Title 45 U.S.C. § 51.
An employee's recovery is not barred by his or her own contributory negligence, but is reduced proportionately. Title45 U.S.C. § 53.
A careful examination of the record reveals sufficient evidence of defendant's negligence for the issue to go to the jury under the above principles. Although little evidence was produced supporting plaintiff's theory that a defective rail caused the accident, he also alleged that the accident could have been caused by inadequate banking of the outside rail on the curve where the derailment occurred or, if the derailment was caused by excessive speed, that Southern pressured its employees to exceed the speed limit, and that Roberts's fellow crew members failed to warn him that he was going too fast. These contentions are supported by the following evidence: Roberts's crew members testified that it was their responsibility to warn the engineer if the train exceeded the speed limit, and to brake the train themselves if the engineer disregarded their warning. A considerable amount of expert testimony established that the train was exceeding the limit, yet the crew members testified that no one attempted to slow the train. Witnesses also testified that no one had ever been reprimanded for completing the train run in under the scheduled time, but several had been reprimanded for exceeding it. The track on which the accident occurred was described as descending sharply over a series of curves, and was superelevated (banked) to a height of one inch. Maximum safe speed is progressively higher as the superelevation increases. The train was overpowered, i.e., equipped with more locomotives than necessary to pull its weight, and made up of TTX cars loaded with two piggyback highway trailers each. These cars have a high center of gravity and tend to bounce and oscillate as they negotiate curves.
Faced with this evidence, we cannot say that, as a matter of law, Southern was not negligent, or that its negligence played no part at all in causing Roberts's injury. The trial judge correctly ruled that a jury question was presented by the evidence.
As to the alleged inconsistency between the granting of U.S. Steel's motion for summary judgment and the denial of Southern's, we find there no basis for overruling the decision below. Southern argues that U.S. Steel was granted its motion for *Page 778 
summary judgment because no evidence was presented of a defect in the broken rail found at the accident site. Because Southern's motion for summary judgment against the plaintiff alleged that plaintiff's complaint was based on the defective rail theory, and no evidence existed as to any defect in the rail, Southern contends that its motion should likewise have been granted. This argument ignores two facts: 1) Roberts proceeded against Southern on several theories of liability in addition to the defective rail hypothesis, and 2) U.S. Steel's motion could have been granted on grounds other than lack of evidence that the rail was defective.
As discussed above, plaintiff's complaint alleged that Southern was liable for the negligence of its employees for failing to provide a safe place to work, and for a defect or insufficiency in Southern's roadbed, tracks and equipment. Southern could have been found liable under any of these theories without U.S. Steel being implicated. Even if the rail were found to be defective, U.S. Steel would be liable only for manufacturing defects, not those caused by improper installation, normal wear-and-tear, or other factors under Southern's control. Thus, a ruling that U.S. Steel was not negligent would not preclude the possibility that Southern was negligent.
U.S. Steel's motion alleged that it was entitled to summary judgment because 1) there was no evidence of any defect in the broken rail for which U.S. Steel would be held liable to Southern, and 2) Southern was barred from any remedy against U.S. Steel since it had delayed an unreasonably long time in giving any notice to U.S. Steel of a defective rail, and had discarded the rail prior to giving notice. U.S. Steel was not notified of a possible claim against it until seventeen months after the derailment, sixteen months after the investigation and over a year after the filing of Roberts's FELA claim. Its motion for summary judgment was supported by the pleadings, by affidavits of its attorneys based on personal knowledge, by excerpts from the transcript of the investigatory hearing, on Southern's report from its Research and Test Department and by the deposition of plaintiff Roberts. Neither Southern nor Roberts presented any affidavits or other evidence placing in issue any of the facts relied on by U.S. Steel. Southern merely filed its own motion for summary judgment against Roberts, alleging that no defect existed in the rail. ARCP 56 (e) provides that ". . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there isa genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis Added) Southern having presented no evidence of any defect in the rail, summary judgment in favor of U.S. Steel was appropriate, but did not dictate a similar disposition of Southern's motion for summary judgment against Roberts.
We also decline to disturb the jury's award of damages. Jury verdicts are presumed to be correct, and the presumption is strengthened when the trial judge overrules a motion for a new trial. Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875
(1972). Where a jury awards damages, the reviewing court will not substitute its judgment for that of the jury, notwithstanding that it might opine that the jury gave too much. Metzger Bros., Inc. v. Friedman, 288 Ala. 386,261 So.2d 398 (1972).
As regards Southern's numerous motions for a mistrial based on allegedly prejudicial statements made by counsel for Roberts during the course of trial and in closing argument, the record fails to show any incidents which warrant reversal. An appellate court is particularly ill-suited to gauge the effect of statements made during the course of trial. For that reason, such matters are left to the sound discretion of the trial judge. Osborn v. Brown, 361 So.2d 82 (Ala. 1978); State FarmMutual Auto. Ins. Co. v. Boyer, 357 So.2d 958 (Ala. 1978). *Page 779 
Southern also argues that statements made by Roberts to one of his physicians, Dr. Langford, regarding pain and other subjective complaints experienced by him as the result of the accident were not admissible. Pointing out that plaintiff, who is a resident of North Carolina, was sent to Birmingham by his attorney to be examined by Dr. Langford, Southern contends that Langford was consulted for the sole purpose of qualifying him to testify at trial, rather than for diagnostic and treatment purposes. A medical opinion based solely upon the history and subjective symptoms related to a doctor solely for the purpose of enabling him to testify at trial is inadmissible. Petitionof U.S. Steel Corp., 436 F.2d 1256 (6th Cir. 1970). See Haglerv. Gilliland, 292 Ala. 262, 292 So.2d 647 (1974). However, plaintiff contends that Langford was consulted well over two years before trial and was requested to provide any treatment necessary to Roberts. He made recommendations to the plaintiff, and stated at trial that he considered him to be a patient. This is sufficient to uphold the trial judge's ruling that the statements were admissible. A trial court's ruling on the admissibility of expert testimony will not be disturbed except where clear abuse of discretion is present. Maslankowski v.Beam, 288 Ala. 254, 259 So.2d 804 (1972).
Finally, Southern argues that statements made by Roberts which were recorded by the secretary of Roberts's treating physician on Southern's own injury reporting form are inadmissible because "self-serving." The statements complained of contradicted the doctor's statement that Roberts had not informed him of any injury to his back or ribs. Southern contends that Roberts should have attempted to impeach the doctor with this document when taking his deposition during discovery. In response to this, we note only that if it were error to admit the report, Southern has not demonstrated that it was prejudiced thereby. Thus, the error, if any, in its admission, is harmless. ARCP 61.
The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.