This is an appeal from a jury verdict for Plaintiff Charles Fridge in a medical malpractice action. Defendant Dr. White's motions for judgment notwithstanding the verdict or new trial or remittitur were denied. On appeal, Dr. White challenges the trial court's denial of his new trial motion, asserting only that the $60,000 damages award was so excessive as to indicate a mistake or an improper motive on the part of the jury.
The law which governs this appeal is stated with such frequency in the opinions of this Court and is so well-settled in the law of Alabama that it is axiomatic.
Jury verdicts are presumed to be correct (Southern RailwayCo. v. Roberts, 380 So.2d 774 (Ala. 1980)), and the power of a trial court to set aside these verdicts,
 "while inherent in order to prevent irreparable injustice, is a power hesitantly exercised because of the solemnity of a jury verdict regarded in the background of that most precious of rights, the right of a trial by jury." Walker v. Henderson, 275 Ala. 541, 544, 156 So.2d 633, 636 (1963).
This presumption of correctness which attends a jury verdict is strengthened by the trial court's denial of a motion for new trial. Osborne v. Cobb, 410 So.2d 396, 397 (Ala. 1982);Southern Railway Co. v. Roberts, supra.
In cases such as the one now before us, in which pain and suffering are at issue, there exists no absolute standard by which to measure the adequacy of damages (Central of GeorgiaRailway Co. v. Steed, 287 Ala. 64, 248 So.2d 110 (1971)), and the trial court is not authorized to interfere with the jury's verdict simply because the court may believe the jury gave too little or too much. Airheart v. Green, 267 Ala. 689,104 So.2d 687 (1958). Only where it clearly appears that the jury's verdict is so excessive as to indicate that it is either the result of "bias, passion, prejudice, corruption or other improper motive" or "some *Page 795 
mistaken view of the merits of the case," can the trial court properly interfere. Vest v. Gay, 275 Ala. 286, 154 So.2d 297
(1963).
Similarly, this Court accords due deference to the discretion of the trial court in these matters. The trial court and jury are present to see and to hear the testimony of each witness, which was, in this particular case, "a peculiar advantage upon the issue[s] of fact for determination." Jacks v. City ofBirmingham, 268 Ala. 138, 143, 105 So.2d 121, 126 (1958). See, also, Southern Railway Co. v. Roberts, supra.[1]
We have reviewed the entire record of the trial, giving special attention to the evidence from which the jury could have made its determination of the amount of the award. A detailed discussion of the evidence is unnecessary. We note, however, that the evidence relating to the issue of the injury incurred by Plaintiff Fridge reveals that Fridge began to experience the symptoms of headaches and spasms of severe facial pain in the summer of 1980. By 1981, the symptoms had become much more frequent (as much as three times in one night) and severe (the testimony of a neurosurgeon at trial indicated that the severity and frequency of the pain of this condition had caused suicide in some patients). Fridge's medication had been increased, but to no effect.
In 1981, a neurologist diagnosed Fridge's ailment as that of trigeminal neuralgia or tic douloureux of the right side of the face. The neurologist determined that Fridge's condition could not be successfully treated with medication and requested the consultation of a neurosurgeon.
On February 6, 1981, after the consultation with the neurologist and Fridge, Defendant Dr. White, a neurosurgeon, performed a surgical procedure known as thermal percutaneous rhizotomy to deaden the trigeminal nerve and relieve Fridge's pain.
The procedure involves the insertion of a needle containing a temperature electrode at the corner of the patient's mouth through to the area of the pain, usually below and behind the cheekbone. When the needle/electrode is in place, the patient, who has not been anesthetized, is asked about the location of his pain and is then given a short-duration anesthetic. The lesion is made and the patient is revived and questioned as to whether the procedure has been effective in relieving the pain. The procedure is repeated until it is successful or until the patient's tolerance for the anesthetic is reached or exceeded. The surgery was performed on the left side of Fridge's face, and Fridge was anesthetized six times before Dr. White determined that the procedure had been unsuccessful.
After the surgery, Fridge's face was bruised and bloodshot, and his left eye drooped and was bloodshot. The numbness created by the procedure on the left side of Fridge's face remained at the time of trial, was noticeable when Fridge shaved, and caused problems with chewing on the left side. After the procedure, Fridge developed pneumonia while still in the hospital and remained in the hospital until February 13, 1981.
Fridge testified that the procedure had not relieved the pain on the right side of his face and that he has continued to experience effects of the condition since the surgery. Fridge and his wife testified as to the emotional effects of the surgery in that Fridge suffered from depression following the procedure and would begin to cry and stutter whenever anyone spoke to him.
In light of the evidence, and giving every presumption to be accorded the determination of the jury, we cannot find that the damages awarded are so excessive as to evidence either an improper motive or a mistaken view of the case. We cannot conclude that the verdict was based upon any improper reasoning as opposed to its *Page 796 
being a reasonable verdict based upon a careful consideration of the evidence.
The judgment appealed from is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES and BEATTY, JJ. concur.
[1] For an excellent discussion of the foregoing, see C. Gamble and D. Corley, Alabama Law of Damages, § 7-6 (1982).