King Motor Company ("King") appeals a judgment based on a jury verdict in favor of Bobby L. Wilson on a fraud claim. The jury returned a single-sum verdict in favor of the plaintiff, Wilson, in the amount of $70,000. King contends that the evidence does not support the verdict. King also appeals the trial court's denial of its motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, on the grounds that the trial court improperly submitted the issue of punitive damages to the jury and that the evidence was not sufficient to support an award of punitive damages. We affirm.
King received a new 1987 Sterling automobile in April 1987, that it eventually sold to Wilson. In June 1987, while the car was in King's possession, it sustained damage when a truck hit the front bumper. King repaired the car and repainted the bumper. During sales negotiations regarding the car, King told Wilson that it was a "new" car and disclosed no prior damage or repair work. Wilson purchased the car on February 9, 1988, for $21,682.00.
Approximately a year and a half after Wilson purchased the car, another car dealer informed him that the car appeared to have been wrecked. Wilson then brought the car to King to investigate the matter. Les Costner, a salesman at King, agreed that the left door of the car looked as if it had been damaged and repainted. The record reflects that the car had sustained no damage either before King received it or after Wilson purchased it. Wilson sued King, alleging that King had engaged in fraudulent conduct and claiming compensatory damages, including damages for mental anguish, and punitive damages.
At trial the parties offered conflicting evidence regarding the extent of damage to the car. King admits that it took the front bumper off, repainted it, and reattached it, without disclosing this damage and repair to Wilson. In addition to the undisputed evidence of damage to the bumper, Wilson presented evidence that the left front fender and left front door had been damaged and repainted. Wilson also presented evidence that body filler appeared to have been used on the left front side of the car. *Page 1155 
Although the evidence was conflicting as to the extent of the damage, all witnesses agreed that there had been some damage to the car. In addition to the evidence of the undisclosed damage to his car, Wilson offered testimony from other individuals who had purchased cars from King without being told of damage that had occurred to those cars.
The evidence also indicates that King made inconsistent statements regarding the mileage on the Sterling's odometer. Wilson testified that the odometer registered nine miles when he looked at the car on King's showroom floor. When he purchased the car a few days later, King reported on the federal odometer disclosure statement that there were 50 miles on the vehicle. Wilson presented evidence that the odometer read 89 miles when the vehicle was received by King Motor Company and that it reflected 148, 155, and 158 miles when the car was repaired on three separate occasions while it was in King's inventory: once to put on a new set of tires, once to install a new battery, and once to install another battery and to replace the door switches. Wilson also presented evidence that King previously had reported inconsistent statements of odometer readings on other cars.
By agreement of counsel, the jury was instructed that it need not separate its verdict into separate awards for compensatory and punitive damages. The jury returned a single-sum verdict in favor of Wilson in the amount of $70,000. King contends that the evidence does not support an award of compensatory damages over $5,682, the amount of damages it argues Wilson actually proved, and does not support an award of punitive damages.
 I. SUFFICIENCY OF THE EVIDENCE
Our review of issues questioning the sufficiency of the evidence begins with a presumption that a judgment based on a jury verdict is correct. White v. Fridge,461 So.2d 793, 794 (Ala. 1984); Alpine Bay Resorts, Inc. v.Wyatt, 539 So.2d 160, 162 (Ala. 1988). The strength of the jury verdict is based upon the right to trial by jury.White v. Fridge, supra. This presumption of correctness is strengthened by the trial court's denial of a motion for new trial. Christiansen v. Hall,567 So.2d 1338, 1341 (Ala. 1990). This Court has noted the following regarding this presumption:
 "Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987). See also Ashbee v. Brock, 510 So.2d 214, 215 (Ala. 1987); Jawad v. Granade, 497 So.2d 471, 474 (Ala. 1986); and White v. Fridge, supra.
This Court will not reverse this judgment, based on a jury verdict, on the ground that the evidence was insufficient unless the evidence, when viewed in a light most favorable to Wilson, indicates that the verdict was "plainly and palpably wrong and unjust." Carter v. Henderson,598 So.2d 1350, 1354 (Ala. 1992) (citing Christiansen v. Hall, supra, at 1341).
Because, by agreement of counsel at trial, the jury did not separate its verdict into compensatory and punitive damages, this Court will not speculate as to the values assigned to each part of the verdict. With respect to amounts awarded by jury verdicts, we note the following:
 "When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury's verdict. We do not have trial by computer, nor do we have post-trial, or appellate, review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact." *Page 1156 
G.M. Mosley Contractors, Inc. v. Phillips,487 So.2d 876, 879 (Ala. 1986). See also Hollis v. Wyrosdick,508 So.2d 704, 706 (Ala. 1987).
 A. Compensatory Damages Award
King contends that the evidence does not support a compensatory damages award over $5,682. King argues that this is the largest sum Wilson proved regarding compensatory damages. King also argues that Wilson failed to present adequate proof to justify an award for mental anguish.
In addition to the evidence discussed above, Wilson presented evidence that the value of his car was decreased because of its previous damage and repair work. Although experts differed in their opinions of how much the damage had diminished the value of the car, all agreed that the car was worth less than it would have been worth with no prior damage. Wilson testified that he would not have purchased this car if he had known that it had been damaged and repaired. Wilson also testified that King's conduct caused him mental anguish.
King points to no evidence indicating that the verdict was plainly and palpably wrong and unjust. In light of the presumption of the correctness of the jury verdict, we conclude that the evidence supports the jury verdict, to the extent it included an award of compensatory damages.
 B. Punitive Damages Award
King also argues that the evidence does not support an award of punitive damages. For the purpose of analysis on review, we will assume that the jury verdict included an amount for punitive damages, because the jury returned a single-sum verdict. A presumption of correctness also applies to jury awards of punitive damages. Shoals Ford, Inc. v.Clardy, 588 So.2d 879, 884 (Ala. 1991). Therefore, a judgment based on a jury verdict awarding punitive damages will be affirmed, in the absence of evidence that the verdict was "plainly and palpably wrong and unjust."
The trial judge instructed the jury on the standard for awarding punitive damages. For claims arising after June 11, 1987, as this one did, that standard is found in Ala. Code 1975, § 6-11-20(a):
 "Punitive damages may not be awarded in any civil action, . . . other than a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. . . ."
(Emphasis added.) King contends that Wilson did not sustain his burden of proving, by clear and convincing evidence, that King engaged in conduct that supports an award of punitive damages.
King offered evidence that in 1988, when Wilson purchased the car, King had an elaborate process to ensure that all purchasers would be informed of any prior damage to cars sold by King. First, King required the car to be inspected upon delivery to see if there was any damage. Second, King required a written repair order to be secured from the sales manager, Bob Shafer, for any repairs made to the car while in the possession of the dealership. Third, a copy of the repair order had to be attached to the invoice. King also required the sales manager to note any damage on the invoice. In addition, King required the sales manager to inform the salesman of any damage when the sales manager approved the sale. King submits that this policy was in place when Wilson purchased the Sterling, but that, by mistake, none of these procedures resulted in disclosure to Wilson.
Wilson, however, presented evidence that Bob Shafer, the sales manager who approved the sale to Wilson, actually saw the truck hit the Sterling, yet failed to disclose this information to Wilson or to Charlie Carver, the salesman who sold the car to Wilson. The evidence also indicates that Shafer knew that the damage decreased the value of the car. Wilson also presented evidence that the damage to the bumper was not minor, and that the damage to other parts of the car, of which King contends it had no knowledge, was not minor.
This evidence, in addition to evidence that King had failed to disclose prior damage to other purchasers, is sufficient to *Page 1157 
support an inference by the jury that King "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to" Wilson. Ala. Code 1975, § 6-11-20(a).
After carefully reviewing the record, we hold that the jury verdict was not plainly and palpably erroneous. There was sufficient evidence to support a finding that King's conduct rose to the level required for the imposition of punitive damages, and, thus, to support the jury verdict to the extent that it includes an award for punitive damages.
 II. MOTION FOR JNOV OR NEW TRIAL
King challenges the denial of its motion for a judgment notwithstanding the verdict, or, in the alternative, a new trial. The trial judge did not rule on the motion, and it was deemed denied by operation of law. Rule 59.1, A.R.Civ.P. This Court reviews the denial of a post-judgment motion by operation of law in the same manner as if the trial court had denied the motion by an order.
A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence. Carter v. Henderson, supra, 598 So.2d at 1353. The standard of appellate review applicable to a motion for a judgment notwithstanding the verdict is identical to the standard used by the trial court in granting or denying the motion. Ogle v. Long,551 So.2d 914, 915 (Ala. 1989). Thus, when reviewing the trial court's ruling on the motion, we must determine whether the party with the burden of proof produced sufficient evidence to create a conflict warranting a jury's determination. MaconCounty Comm'n v. Sanders, 555 So.2d 1054, 1056 (Ala. 1990); John R. Cowley Bros., Inc. v. Brown,569 So.2d 375, 376 (Ala. 1990). Our review is further subject to the caveat that all evidence must be viewed most favorably to the nonmovant, in this case Wilson. Ogle v. Long, at 915.
Because we have determined that the evidence is sufficient to support the jury verdict, it follows that Wilson presented sufficient evidence to require a jury's determination. Therefore, King's motion for judgment notwithstanding the verdict was properly denied.
The alternative motion for a new trial tests the weight and preponderance of the evidence. This Court's review of the denial of a motion for new trial is subject to a presumption that the trial court's ruling was correct. Carter v.Henderson, 598 So.2d at 1354; Christiansen v.Hall, 567 So.2d at 1341; Alpine Bay Resorts, Inc. v.Wyatt, 539 So.2d 160, 16263 (Ala. 1988). This Court will not reverse the denial of a motion for new trial, on the grounds of insufficiency of the evidence, where the underlying judgment is based on a jury verdict, unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong or unjust."Carter, 598 So.2d at 1354; Christiansen,567 So.2d at 1341.
With respect to an award of punitive damages, this Court has recognized that a "defendant has the right to a judicial determination and [that] the courts have the responsibility to determine whether a jury verdict awarding punitive damages deprives the defendant of his property in violation of the due process protections that § 13 of the [Alabama] constitution guarantees him." Fuller v. Preferred Risk Life Ins.Co., 577 So.2d 878, 885 (Ala. 1991); see also Hammondv. City of Gadsden, 493 So.2d 1374 (Ala. 1986); GreenOil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989). King did not request, and the trial court did not conduct, a hearing pursuant to Hammond on the issue of excessiveness of the punitive damages award. We conclude that this case need not be remanded for a Hammond hearing.
Ala. Code 1975, § 6-11-23(b), specifically requires the trial court to conduct a hearing or receive additional evidence concerning a jury verdict for punitive damages, upon motionof any party. In Fuller v. Preferred Risk Life Ins.Co., supra, 577 So.2d at 885, this Court held that a remand was not necessary where the appellant did not claim that the jury verdict deprived the appellant of its property without due process of law under Ala. Const. 1901, § 13. *Page 1158 
In Fuller, the appellant offered no evidence to support its contention that the verdict was excessive, even after the appellee had offered evidence to support her claim that the verdict was not excessive. The appellant also indicated that the jury verdict "would not significantly impair their ability to operate." Fuller, 577 So.2d at 885.
In this case, King alleged in its postjudgment motion that the evidence does not support an award of punitive damages; however, King does not claim that the verdict was excessive so as to deprive it of the due process guaranteed by Ala. Const. 1901, § 13. King did not ask for a hearing pursuant to § 6-11-23 or pursuant to Hammond. King did not assert that the punitive damages award exceeded the amount that a jury might properly assess to vindicate the public and to punish the defendant. Additionally, there is no evidence that the jury's verdict was prompted by any improper motive, such as bias, passion, prejudice, or corruption, or that the award of punitive damages deprived the defendant of its property without due process of law.
Because King did not ask the trial court to do so, neither § 6-11-23(b) nor this State's case law requires the trial court to consider whether the punitive damages award was excessive so as to deprive King of his property in contravention of § 13. Therefore, a remand is not required on this basis.
Because the evidence is sufficient to support the jury verdict, that verdict is not "plainly and palpably wrong or unjust." Therefore, the trial court did not err in denying King's motion for a new trial. Accordingly, Wilson's judgment, based on a jury verdict, is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.