THOMPSON, Judge.
The Cadle Company (“Cadle”), an Ohio Corporation, filed a complaint on May 17, 1993, against Ricky Copeland, a/k/a Ronald Copeland, to collect on a series of promissory notes through a personal guaranty agreement. Copeland answered on June 3, 1993. Cadle amended its complaint to include claims of liability based on partnership theories. Copeland amended his answer to include a counterclaim seeking damages for an alleged abuse of process. The trial court directed a verdict in favor of Copeland on Cadle’s claim of partnership by estoppel, at the conclusion of the presentation of Cadle’s case. Following a jury trial and verdict, the trial court entered judgment on January 30, 1997, in favor of Copeland on Cadle’s claim and in favor of Copeland on his counterclaim. The judgment awarded $48,000 in compensatory damages and costs. Cadle’s post-trial motions were denied by operation of law.
Cadle is an investment company that purchases loans from financial institutions. It purchased, from the Federal Deposit Insurance Corporation, a package of bank notes and assets that the FDIC had acquired from the failed First State Bank of Atmore, Alabama. The promissory notes at issue in this case were executed by Jack Sullivan d/b/a Sullivan Service Company. Cadle alleges that Copeland was a partner in Sullivan Service and that Copeland had executed a guaranty agreement on March 13, 1985, agreeing to pay the debts of Sullivan Service in case of default. Cadle’s complaint concerns 15 promissory notes, beginning with a note dated March 9, 1984, and ending with a note dated June 28,1985. The total indebtedness, including interest claimed on all the promissory notes, was $237,616.32. Copeland claims that he never signed the guaranty agreement and further asserts that Cadle altered the guaranty agreement after the FDIC had transferred the package of bank notes to Cadle pursuant to the sale.
Cadle alleged that the guaranty agreement was entered into between the First State Bank of Atmore and Copeland. The terms of the guaranty provided that it was executed “to induce First State Bank of Atmore ... to make loans or extend other accommodations to or for the account of Sullivan Service Co.” There are two versions of this guaranty in the record. Both of these copies contain what appears to be Copeland’s signature and both are dated March 13, 1985. One copy reflects an “X,” apparently marked in pencil, in a box beside paragraph A An “X” in box A indicates that the guarantor agrees to pay “each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Bank.” The other copy contains no “X” in box A
Cadle claims that the trial court erred by allowing into evidence the testimony of the FDIC records custodian and the copy of the guaranty that the records custodian certified as a “true and correct” copy of the guaranty contained in the FDIC files; the copy did not contain an “X” in box A Cadle argues that the copy of the guaranty that did not have an “X” in box A was neither material nor relevant evidence. Cadle also claims that even if the admission of the guaranty and the affidavit of the FDIC records custodian does not constitute reversible error, the verdict for Copeland on the guaranty claim was against the great weight and preponderance of the evidence.
Copeland testified that when he was initially contacted by the FDIC concerning his alleged guaranty of promissory notes involving Sullivan Service and the First State Bank of Atmore, he told the FDIC he had not guaranteed any of the Sullivan Service loans. A representative of the FDIC requested that Copeland provide him with copies of his signature, and Copeland complied. Upon receiving the copies of Copeland’s signature, the FDIC responded, “[Ajfter comparing the signature on your check to that on the Guar *811 anty, it is clear the signature on the Guaranty is authentic.”
Copeland further testified that he and Jack Sullivan had attempted to obtain a small business loan in order to improve the cash flow of Sullivan Service. However, the bank held notes, some of which were delinquent, on another business Jack Sullivan owned, Kirkland Brothers Mobile Homes. The bank would not agree to the small business loan unless the Kirkland Brothers Mobile Homes indebtedness was restructured as a part of the transaction. Copeland stated he was unwilling to be a party to any small business loan that would provide financing for Kirkland Brothers Mobile Homes.
Copeland also testified that he did not sign the guaranty in question. He claimed that the secretary for Sullivan Service, Annie Moye, signed his name to the document. Moye denied that she signed Copeland’s name to the document. However, she said that she had overheard arguments that Sullivan and Copeland had about financing. Moye testified that, based on those discussions between Sullivan and Copeland, she did not believe Copeland would have signed the guaranty.
The former president of the First State Bank of Atmore, Terry Jones, said that he could not recall whether Copeland signed the guaranty in connection with the notes. He said it was common practice to mark either box A or box B with a typewriter when a guaranty was executed. He explained, “[I]f neither ‘A’ nor ‘B’ is checked then it doesn’t tell you what the borrower is guaranteeing. I mean it’s a guaranty, but guaranty of what?” [1]
As the trier of fact, the jury was presented with questions as to the authenticity of Copeland’s signature on the guaranty and whether the guaranty had been altered by the addition of an “X” in box A. The jury returned a general verdict in favor of Copeland. Thus, it found that Copeland was not liable on the promissory notes as a result of the guaranty. Cadle filed posttrial motions for a “judgment notwithstanding the verdict under Rule 50, [Ala. R. Civ. P.,] and an alternative motion for a . new trial and a motion • to alter or amend the judgment.” Those motions were denied by operation of law. See Rule 59.1, Ala. R. Civ. P.
In Alabama, jury verdicts are presumed correct. King Motor Co. v. Wilson, 612 So.2d 1153, 1155 (Ala.1992). The presumption of correctness is strengthened upon the denial of a post-judgment motion for a new trial. Id. A post-judgment motion denied by operation of law is reviewed in the same manner as if the trial court had denied the motion by an order. Id. at 1157. A jury verdict will not be set aside “unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict” that it clearly indicates that the jury’s verdict was “plainly and palpably wrong and unjust.” Id. at 1155. Stated differently, this court.will not reverse a judgment based on a jury verdict, unless the evidence, when viewed in a light most favorable to the prevailing party, shows that the verdict was “plainly and palpably wrong and unjust.” Id. at 1157.
Copeland testified that he did not sign the guaranty for Sullivan Service. There was no testimony offered to dispute Copeland’s denial. Moye testified that she did not believe Copeland would have signed the guaranty. The only contrary evidence was the apparent presence of Copeland’s signature on the face of the guaranty and the letter from the FDIC expressing the opinion that Copeland’s signature appeared authentic. Accordingly, we find evidence to support the jury’s determination that Copeland was not liable for the notes, based on the guaranty.
Cadle claims that the copy of the guaranty with no “X” in box A was improperly admitted into evidence. We agree that the admission of this document was questionable. However, we need not reach this issue. The jury could have based its verdict on other evidence, including Copeland’s testimony that he did not sign the guaranty that contained an “X” in box A. The admission of the guaranty that contained an “X” in box A was not *812 challenged on appeal. The general verdict in favor of Copeland concerning the guaranty claim was supported by sufficient evidence.
In returning a general verdict in favor of Copeland, the jury also found in favor of Copeland on the partnership claim asserted by Cadle. Cadle contends that the verdict in favor of Copeland is due to be reversed on the basis that the determination that he was not liable as a partner for the debts was against the weight and preponderance of the evidence. The judge correctly charged the jury on the issue of partnership and read to the jury that part of the Alabama Partnership Act appearing at Ala.Code 1975, § 10 — 8—20(2)—(4), which provides as follows:
“(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
“(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
“(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
“a. As a debt by installments or otherwise;
“b. As wages of an employee or rent to a landlord;
“c. As an annuity to a widow or representative of a deceased partner;
“d. As interest or other payment on a loan, though the amount of payment varies with the profits of the business; or
“e. As the consideration for the sale of the goodwill of a business or other property by installments or otherwise.”
Jones, the former president of First State Bank, loosely referred to Copeland as Jack Sullivan’s partner in a memo to the credit file that he entered during the time Sullivan was restructuring the Kirkland Brothers indebtedness. Jones testified at trial, however, that he never considered Copeland to be a legal partner of Sullivan. Evidence was also presented showing that Copeland occasionally wrote cheeks for his personal use out of the business account and that Copeland and Sullivan were listed as co-owners on the face of rental agreements that they presented to customers. In addition, Cadle presented a letter which Copeland had sent to the FDIC in January 1989. In that letter, Copeland described the history of his business involvement with Sullivan Service Company and explained his arrangement with Sullivan to receive 50 percent of the profits from each lease he was able to secure on Sullivan’s mobile homes.
Moye, the Sullivan Service secretary, testified that she did not know what agreement Copeland and Sullivan had regarding Copeland’s compensation. She testified that Copeland had taken out a personal loan on behalf of the company and that the company had repaid the note, but she later testified that she had also done this. Copeland testified that he had worked as an employee for Sullivan Service Company with a hope of future partnership. Upon review of all of the evidence, we conclude that the jury verdict in favor of Copeland on the issue of partnership was supported by credible evidence.
Cadle further claims that the trial court erred in directing a verdict for Copeland on its claim of partnership by estoppel. We disagree. We note initially that the standard of review applicable to a motion for directed verdict is the “substantial evidence rule.” Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 228 (Ala.1990). In order to withstand a motion for a directed verdict, a party must present substantial evidence in support of each element of his claim. Id. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Cadle’s claim that Copeland is estopped from denying liability for the notes as a *813 partner is premised on a theory of liability contained in the Alabama Partnership Act and codified at Ala.Code 1975, § 10-8-55. This statute provides that a person who represents himself to be a partner or allows another to represent him as a partner to a third party who relies to his detriment upon the representation, becomes liable as though he were an actual partner. The statute further provides that if a person publicly represents himself as a partner or allows someone else to publicly represent him in this light, he is liable as a partner to anyone who gives credit based upon the actual or apparent partnership.
Jones’s memo to the credit file referring to Copeland as Jack Sullivan’s partner could be construed as a private representation of partnership. However, there is no clear evidence that Copeland consented to that representation. Further, Jones testified that he did not consider Copeland as Sullivan’s legal partner and did not rely upon Copeland’s business relationship with Sullivan as a basis for making the loans in question. Other evidence presented, such as Copeland’s writing personal cheeks out of the business account, the display of Copeland’s name on the company business cards, and the listing of Copeland as co-owner on the rental agreement, may have tended to indicate a public representation of partnership; however, the record is devoid of any evidence that credit was given upon the actual or apparent partnership. Therefore, the record contains no evidence of reliance, an essential element of the claim of partnership by estoppel. See Smith v. Norman, 495 So.2d 536 (Ala.1986). Because the Cadle company failed to present substantial evidence in support of an essential element of its claim of partnership by estoppel, the trial court properly directed a verdict for Copeland on this claim. The judgment is affirmed insofar as it relates to Cadle’s claims.
Cadle complains that the evidence submitted at trial was insufficient to support Copeland’s counterclaim alleging abuse of process. In analyzing this claim, we note that our supreme court has explained the difference between an abuse of process claim, the kind of claim upon which the verdict in the present matter was based, and a malicious prosecution claim. “Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued.” C.C. & J., Inc. v. Hagood, 711 So.2d 947 (Ala.1998) (citations omitted)(emphasis original). The allegedly altered guaranty was included with Cadle’s initial complaint. “Wrongful activity designed to create a claim goes to the initiation of process, not to its later use. As we have said, any question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse of process claim.” Id., 711 So.2d at 951.
In its oral charge to the jury, the trial court stated:
“In the event that you find that The Cadle Company is not entitled to recover the amount of these notes from Mr. Copeland under the guaranty or under the partnership theory then you should next consider Ricky ' Copeland’s counterclaim, which alleges abuse of process by The Cadle Company. You can only consider the abuse of process counterclaim filed by Ricky Copeland if you first determine that The Cadle Company or its agent materially and fraudulently altered the guaranty agreement.”
This jury charge misstates the law. The trial court told the jury that if it determined that Cadle had used a materially and fraudulently altered guaranty agreement to support its claim, then the jury could consider Copeland’s abuse of process counterclaim. This instruction could reasonably lead the jury to believe that Cadle’s alleged misdeeds in manufacturing or altering the guaranty and then filing an action based on the altered document could form the basis for an abuse of process claim.
Cadle relied on the allegedly altered guaranty as the basis for its claim against Copeland. While suing on the basis of an altered instrument might support a claim of malicious prosecution, it does not support a claim of abuse of process. If Cadle materially and fraudulently altered the guaranty, it did so before it filed its complaint. This does not give rise to a claim of abuse of process.
*814 In its oral charge, the trial court correctly stated the elements of the tort of abuse of process, and it correctly provided instruction on the terms it used. The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice. Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221, 1225 (Ala.1993).
The only evidence offered by Copeland to support his abuse of process counterclaim was the evidence pertaining to the allegedly altered guaranty instrument. He presented no evidence that Cadle committed a wrongful act to further its complaint after process was issued to Copeland on the complaint.[2] He did not produce evidence upon which the jury could properly find that Cadle had committed the tort of abuse of process. A plaintiff is entitled, under due process of law, to have each properly supported claim submitted to the jury with a correct statement of the applicable law. U.S. Const, amend. XIV, § 1; Ex parte Gradford, 699 So.2d 149, 153 (Ala.1997). The abuse of process counterclaim was not properly supported, and the applicable law was incorrectly stated to the jury. The judgment is reversed insofar as it relates to Copeland’s abuse of process counterclaim, and the case is remanded to the trial court for entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur in the result.

. Both copies of the guaranty contain a box B that can be used to specify the debt being guaranteed. Box B was not marked on either copy of the guaranty.

. Copeland claims in his appellate brief that ‘‘Ca-dle continued to willfully abuse the process after illegally filing suit, e.g., adding a partnership claim which has no basis in fact after Copeland discovered the altered guaranty.” However, this claim is without merit. Cadle properly filed an amended complaint and presented evidence regarding the claim of a partnership.