The defendant, Lozier Corporation, appeals from a judgment based on a verdict for the plaintiff, Delaine Gray. Lozier argues that the trial court should have granted its motion for a judgment notwithstanding the verdict (JNOV). Gray alleged that Lozier violated § 25-5-11.1, Ala. Code 1975, a statutory exception to the "employee-at-will" doctrine,[1] by terminating her employment with Lozier, she says, in retaliation for her making a workers' compensation claim. Section 25-5-11.1
provides:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11."
Underlying this case are two workers' compensation claims, one that Gray made before she applied for a job at Lozier, and which Gray failed to disclose on her job application, and a claim made while she was at Lozier that led to Lozier's discovery of the previous claim.
Gray's first claim was made in 1987, after the convenience store where she then worked was robbed while she was on duty. The armed assailant in that robbery had threatened Gray's life, and Gray requested benefits for a psychological injury. This claim was promptly denied, and Gray evidently did not pursue it further. She left the employ of the convenience store and was hired by Lozier in 1988. *Page 1036 
Lozier makes metal shelves and metal products for retail stores. In 1990, Gray injured her back while moving a pallet at Lozier, and, based on her injury, she filed a workers' compensation claim. Lozier's termination of Gray occurred after Gray's mother complained to the Lozier plant manager about how slowly this claim was being processed and after Lozier officials had discovered the prior undisclosed claim. Lozier says it fired Gray because she had not disclosed her earlier workers' compensation claim in response to an application question about the existence of any prior "claim." Lozier officials testified that Gray had violated a written company policy against "willful omission of pertinent data on [the] employment application." R. 132. Lozier's written rules provide that "[f]ailure to observe these rules will be grounds for disciplinary action, up to and including discharge."Id.
Lozier argues that Gray did not produce "substantial evidence" at trial in support of her claim of a retaliatory discharge. Because this action was commenced after June 11, 1987, Ala. Code 1975, § 12-21-12, applies; that section requires proof by "substantial evidence" to create an issue of fact and thereby defeat a motion for a directed verdict or for a JNOV. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); Ala. Code 1975, § 12-21-12(d).
Gray, who has only a 10th-grade education, testified that when she completed the Lozier application, she thought she was answering truthfully in stating that she had filed no prior workers' compensation claims, because, she said, the compensation request in question had been promptly denied. Gray's testimony indicates that Gray had believed that unless a request for benefits was deemed payable, it was not a "claim"; that if she had made a "claim" in 1987 she would not have been denied benefits, and conversely, since she was denied benefits she had failed to make a "claim."
Gray testified that she stated this perception to Lozier officials when they confronted her with the misstatement on her job application. She denies having stated to Lozier officials that she had intentionally deceived them. In contrast, Lozier officials testified that Gray had admitted that she "falsified" the information as to the prior workers' compensation claim. Lozier states, however, that "it does not seek, and never has sought, information about prior workmen's compensation claims to screen applicants." According to Lozier, it was wholly irrelevant to its hiring decision as to Gray that she had filed a prior claim.
This, of course, contradicts Lozier's assertion that in firing Gray, it was merely adhering to a policy of terminating any employee who committed a "willful omission of pertinent data on [their] employment application." Lozier itself denies that the "omitted" answer was "pertinent data."
Moreover, there was evidence at trial from which the jury could have found that Lozier's contention that it fired Gray for acting "willfully" was a mere pretext. Gray's testimony as to her understanding of what a workers' compensation "claim" is suggests that she did not willfully mislead Lozier, as does evidence that when she applied for a job at Lozier she was forthcoming with other health-related information. For example, she revealed on her application documents that she had undergone heart surgery and had previously been diagnosed with cancer. She stated also that she smoked and suffered from frequent or chronic coughing. R. 129. If Gray had intended to hide health-related information that might damage her chances of employment, it is wholly illogical that she would have so candidly disclosed potentially serious health problems. We conclude that Gray presented substantial evidence in support of her claim.
Lozier argues also, however, that the jury verdict was excessive as to compensatory and punitive damages. As to punitive damages, the trial court conducted a post-trialHammond hearing to review the propriety of the jury's award. See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). Lozier stipulated that the award would not have an *Page 1037 
undue financial impact on it, but argued, inter alia, that the jury could not properly have found that it was so culpable, or so profited from its termination of Gray, as to warrant $100,000 in punitive damages. See Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989) (discussing factors that are relevant in determining, post-trial, whether a punitive damages award is excessive; among the factors are the "reprehensibility of the defendant's conduct," the "financial position of the defendant," and whether "the wrongful conduct was profitable to the defendant").
The trial court found that the punitive damages award was not excessive. We agree.
Punitive damages "must not exceed an amount that will accomplish society's goals of punishment and deterrence."Green Oil Co., 539 So.2d at 222. However, a presumption of correctness applies to jury awards of punitive damages. ShoalsFord, Inc. v. Clardy, 588 So.2d 879, 884 (Ala. 1991). "[A] judgment based on a jury verdict awarding punitive damages will be affirmed, in the absence of evidence that the verdict was 'plainly and palpably wrong and unjust.' " King Motor Co. v.Wilson, 612 So.2d 1153, 1156 (Ala. 1992).
There was evidence that Lozier acted with a wrongful intent when it fired Gray from her job. Aside from the gravity of wrongfully depriving Gray of what was her livelihood, we note the chilling effect of retaliatory discharges.
 "In order for the beneficent goals of the worker's compensation chapter to be realized, the employee must be able to exercise his right to be compensated for work-related injuries in an unfettered fashion without being subject to reprisal. The fear of being terminated would have a chilling effect on the employee's exercise of a statutory right."
McClain, 578 So.2d at 1301.
In McClain, the Court's discussion of the "chilling effect" of a wrongful termination obviously extends to a chilling effect, not only on the employee who may be in the position to make a claim and thereby risk being terminated, but on others in the defendant's employ. Lozier's arguments on this issue overlook the potential chilling effect on a potentially large group of employees, and the potential "gain" to Lozier from having fewer claims filed.
Given the foregoing, we are not persuaded that the punitive damages award in this case was excessive.
As to the jury's award of $200,000 in compensatory damages, however, we agree with Lozier that the jury erred. At most, there was evidence of only $11,053.50 in compensatory damages.
As stated, Gray has a 10th-grade education. Before working for Lozier, she had been employed in a series of jobs, working as a cashier, a waitress, and a grocery store clerk. Her highest hourly wage was $3.75. At Lozier, Gray received health insurance worth $175 a month as a benefit of her employment and received one week of paid vacation a year. She testified that just before her termination she worked an average of 10 hours a week of overtime at $11.475 an hour, and 40 hours at her regular rate of $6.75 an hour. Gray testified to having lost six months of wages before she found another job. She also testified to being offered and to having accepted four jobs since leaving Lozier. All of those jobs paid less per hour than her job at Lozier, but more than she had earned before working at Lozier.
Gray alleged in the trial court that her future ability to obtain employment like the employment she had enjoyed in the past has been impaired because Lozier fired her. However, there was no evidence at trial that Lozier's termination of Gray caused Gray to be less marketable as an employee. In fact, as stated, Gray has been offered and has accepted at least four jobs since being terminated and is earning a greater wage than she earned before the Lozier employment.
Gray presented no evidence that she suffered any mental anguish as a result of her termination.
In sum, the evidence at trial as to compensatory damages shows only that Gray lost $270 a week for 26 weeks in regular pay and $114.75 a week for 26 weeks in overtime pay, *Page 1038 
plus 6 months' worth of health benefits valued at $175.00 a month, all totalling $11,053.50. Accordingly, the trial court erred in denying a JNOV as to the jury's compensatory award of $200,000.
Finally, Lozier argues that the trial court erred in failing to grant it a new trial, because, says Lozier, a juror left the jury room during deliberations and returned after speaking to someone about the deliberations. As to extraneous matters and the jury's deliberations, the trial court stated: "[The] evidence does not . . . create any inference of wrongful conduct by the jurors, the bailiffs, nor anyone else involved in the trial of this case. . . ." The trial court denied Lozier's motion for a new trial.
We have stated:
 "The decision to grant or deny a new trial rests within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error."
Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44
(Ala. 1990); see Savage Industries, Inc. v. Duke, 598 So.2d 856,858 (Ala. 1992).
After thoroughly reviewing the evidence produced on this issue, we find Lozier's contentions to be without evidentiary support. For example, the juror cited by Lozier as testifying that "[a] juror left the jury room and returned after having spoken to someone about deliberations" in fact testified, "I don't remember whether they [other jurors] had been outside [the jury room] or not." R. 486.
Given the foregoing, we affirm the denial of a new trial and the denial of a JNOV as to punitive damages. We reverse that portion of the judgment awarding compensatory damages, and we remand this case for the entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SHORES, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.
[1] The employee-at-will doctrine "provides that an employment contract terminable at the will of either the employer or the employee may be terminated by either party at any time with or without cause." McClain v. Birmingham Coca-Cola Bottling Co.,578 So.2d 1299, 1300 (Ala. 1991).