773 So.2d 1031 (1999)
GOLD KIST, INC.
v.
Ronald Joe HOOD.
2980104.
Court of Civil Appeals of Alabama.
July 9, 1999.
Rehearing Denied September 10, 1999.
*1033 Robert P. Fann and Michael B. Odom of Fann & Rea, P.C., Birmingham, for appellant.
G. Whit Drake and Rex W. Slate of Drake & Associates, Birmingham, for appellee.
PER CURIAM.
Ronald Joe Hood filed an action against Gold Kist, Inc., pursuant to § 25-5-11.1, Ala.Code 1975, alleging that, in retaliation for his filing a workers' compensation claim, Gold Kist had terminated his employment. After a trial, the jury returned a verdict in favor of Hood, awarding him $5,000 in compensatory damages and $95,000 in punitive damages; the court entered a judgment on the verdict. The trial court denied Gold Kist's post-judgment motion for a new trial, for a judgment as a matter of law, and for a remittitur. Gold Kist appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
It is well settled in Alabama that an employment contract is generally terminable at will by either party, with or without cause or justificationfor a good reason, a wrong reason, or no reason at all. Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987). However, the legislature has carved out a narrow exception in the case of an employee whose employment is terminated as a result of the employee's filing a workers' compensation claim. Section 25-5-11.1, Ala.Code 1975, provides:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of § 25-5-11."
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala.1988), our Supreme Court interpreted the statute as it deals with terminating employment for filing workers' compensation claims:
"We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was `terminated' because he sought to recover workers' compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the employee must prove that the reason given by the employer was not true but a pretext for an otherwise impermissible termination."
Twilley, 536 So.2d at 1369.
In Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1122 (Ala.1992), the Supreme *1034 Court elaborated on its holding in Twilley, stating:
"We note that it would be more appropriate to say that, after the defendant has met his burden of coming forward with evidence of a legitimate reason, `"the plaintiff then has the burden of going forward with rebuttal evidence showing that the defendant's [stated] reasons"' for terminating the plaintiff are not true. Twilley, 536 So.2d at 1369, quoting Pushkin v. Regents of the University of Colorado, 658 F.2d 1372, 1387 (10th Cir.1981). The plaintiff does not have to `prove' that the employer's stated reason is not true unless the defendant's evidence is sufficiently certain, without more evidence from the plaintiff, to support a directed verdict. If the plaintiff's prima facie case is strong, and the defendant's evidence of an asserted reason is weak or equivocal, the jury might simply disbelieve the defendant."
Subsequent cases have held that an employee establishes a prima facie case in a retaliatory-discharge case by proving that the employee filed a workers' compensation claim for a work-related injury, that the injury prevented the employee from working for a period of time, and that upon returning to work, the employee was informed that he or she no longer had a job. See Allen v. Albrecht Enterprises, Inc., 675 So.2d 425, (Ala.Civ.App.1995); Rickard v. Shoals Distributing, Inc., 645 So.2d 1378 (Ala.1994); Overton v. Amerex Corp., 642 So.2d 450 (Ala.1994); and Graham v. Shoals Distributing, Inc., 630 So.2d 417 (Ala.1993).
The record tends to show the following. In June 1994, Hood applied for work with Gold Kist as a truck driver. On his application he was asked to list all traffic convictions for the past three years. In response, he listed three speeding tickets. Hood told Jerry Howell, the interviewer and the safety director for Gold Kist, that he could not remember all of his traffic violations. As part of the application and review process, Gold Kist ordered a "Motor Vehicle Report," or MVR, reflecting Hood's driving record. The report showed an additional four traffic violations that were not listed on Hood's application. Howell showed the report to Hood and asked Hood if it refreshed his memory. Howell put the MVR in Hood's personnel file. Howell did not ask Hood to change anything on his application, nor did he accuse Hood of falsifying any information on his employment application. Hood began working for Gold Kist that month.
In August 1994 and again in November 1994, Hood injured his knee while working for Gold Kist. In December 1994, Hood underwent surgery. He returned to work in January 1995. Hood received workers' compensation benefits during this period. Hood testified that after returning to work, he was treated differently and that he felt "picked at." He testified that his supervisor, Steve McGlaughn, harassed him.
On March 23, 1995, on his way to work, Hood was stopped for speeding. At this time, he learned that his license had been suspended. Hood told McGlaughn that he had a suspended driver's license and would not be able to drive that day. He further told McGlaughn that he was going to Montgomery to "get it straightened out." We note that he was successful in having his license reinstated, and he was able to drive for work. That same day, Gold Kist ran another MVR on Hood; it showed that he had failed to list five traffic violations on his employment application. Four of those five were listed on the first MVR that Gold Kist had ordered at the time of Hood's initial interview.
Upon arriving at work on the morning of March 24, 1995, Hood was told to see Max Dover, the personnel director. Dover informed Hood that his employment was being terminated because he had falsified his past traffic violations. Dover explained that it was the policy at Gold Kist to fire, or not hire, one who had falsified information on an employment application.
*1035 Gold Kist asserts that the trial court erred in denying its postjudgment motion for a judgment as a matter of law, because, it says, Hood failed to present substantial evidence in support of his retaliatory-discharge claim. To determine whether the trial court correctly denied Gold Kist's motion for a judgment as a matter of law, formerly known as a directed verdict, this court must decide "whether the party with the burden of proof produced sufficient evidence of a conflict warranting a jury's consideration," and, in making that determination, the court must review the evidence "in a light most favorable to the nonmoving party." Gresham v. Schlumberger Industries, Inc., 656 So.2d 347, 349-50 (Ala.1995) (citations omitted). "A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine." K.S. v. Carr, 618 So.2d 707, 713 (Ala.1993). In the context of a retaliatory-discharge case, the Supreme Court stated in Twilley, "[W]e do not believe that the legislature intended that an employer is entitled to a directed verdict if the employer presents any evidence that the termination was not because of the employee's instituting or maintaining an action to recover worker's compensation benefits." Twilley, 536 So.2d at 1368.
In denying the motion for a judgment as a matter of law, the trial court entered the following findings:
"[Hood] presented substantial evidence that [Gold Kist's] proffered reason for firing him was a pretext. Upon direct examination by [Hood], Max Dover testified that it was the unbending policy of [Gold Kist] to fire, or not to hire, someone who put false information on [his] pre-employment application. [Hood's] counsel questioned Dover about two Motor Vehicle Reports (MVR) run on [Hood], which listed [Hood's] past traffic violations. The first MVR was run on [Hood] by [Gold Kist] at the time [Hood] was applying for a job with [Gold Kist]. The second MVR was run on [Hood] by [Gold Kist] the day before [Hood] was fired. Dover pointed to certain traffic violations listed on the first MVR which, Dover claimed, [Hood] should have listed on his pre-employment application. However, when shown the traffic violations listed on the first MVR, Dover admitted that the traffic violations were virtually the same as those listed on the second MVR, and further admitted that [Gold Kist] had a record of those violations in its file on [Hood] since just prior to hiring him. Furthermore, upon direct examination, [Hood] testified that [Gold Kist's] former safety director, Jerry Howell, showed him the first MVR at the time [Hood] was applying for employment with [Gold Kist]. This testimony contradicted the statements of Dover and Sheila Walters, [Gold Kist's] current personnel director at the Russellville facility, that it was their unbending policy to fire (or not hire) persons who withheld or gave false information on their pre-employment applications. The evidence showed that this policy of [Gold Kist] was invoked only after [Hood] sought workers' compensation benefits."
After reviewing the record, we hold that a reasonable jury could have inferred that Gold Kist's stated reason for firing Hood was a mere pretext for terminating Hood's employment because he had sought workers' compensation benefits. Evidence of an employee's continued employment in spite of the employee's violation of a stated company policy, and termination of that employee's employment upon the violation only after the employee seeks workers' compensation benefits, is proper evidence from which a jury can infer that the stated reason for termination was a mere pretext and that the employee was terminated for seeking workers' compensation benefits. See, Lozier Corp. v. Gray, 624 So.2d 1034 (Ala.1993); Beaulieu of America, Inc. v. Kilgore, 680 So.2d 288 (Ala.Civ.App.1996). Therefore, the trial court properly denied *1036 Gold Kist's motion for a judgment as a matter of law.
Gold Kist also contends that Hood failed to present clear and convincing evidence to support an award of punitive damages. To recover punitive damages, Hood had to show by clear and convincing evidence that Gold Kist "consciously or deliberately engaged in oppression, fraud, wantonness, or malice" with regard to Hood. § 6-11-20(a), Ala.Code 1975.
Jury verdicts are presumed to be correct. Eubanks v. Hall, 628 So.2d 773 (Ala.Civ.App.1993). An appellate court will not reverse a judgment based on a jury verdict unless, after allowing all reasonable presumptions of correctness, it concludes that the preponderance of the evidence is against the verdict and is so decided as to clearly convince the appellate court that the verdict is wrong. Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala.1992).
Hood presented evidence tending to show that although he had had no problems at work before his injury, when he returned to work after his injury his supervisor harassed him. Hood said people were then different around him and, he said, he felt "picked at." Hood also presented evidence indicating that five other Gold Kist employees who had sought workers' compensation benefits for work-related accidents were subsequently fired. Based on this evidence, a jury could reasonably have found that Gold Kist acted consciously and deliberately in terminating Hood's employment after he filed his claim for workers' compensation benefits. The evidence supports an award of punitive damages.
Gold Kist also argues that the jury's award of $95,000 in punitive damages is excessive. "[A] judgment based on a jury verdict awarding punitive damages will be affirmed, in the absence of evidence that the verdict was `plainly and palpably wrong and unjust.'" Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993), citing King Motor Co. v. Wilson, 612 So.2d 1153, 1156 (Ala.1992). In a supplementary order, the trial court set out extensive findings as to why it decided that the punitive damages award was not excessive. We agree with the trial court's assessment.
In BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("BMW I"), the United States Supreme Court cited three guideposts that a court should use in reviewing a punitive-damages award for excessiveness: the degree of reprehensibility of the defendant's action; the ratio between the punitive-damages award and the compensatory damages award; and a comparison of the punitive-damages award to the civil or criminal penalties that could be imposed for comparable misconduct. 517 U.S. at 575. In BMW of North America, Inc. v. Gore, 701 So.2d 507, (Ala.1997) ("BMW II"), the Alabama Supreme Court held that the three guideposts set out by the United States Supreme Court in BMW I did not exclude a court's consideration of the factors previously prescribed for Alabama courts in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
In BMW I, the Supreme Court said that the degree of reprehensibility of the defendant's conduct is perhaps the most important factor for a court to consider when reviewing an award for excessiveness. The Alabama Supreme Court said that in determining the reprehensibility of a defendant's conduct, the reviewing court may consider "`[the] duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover up" of that hazard, and the existence and frequency of similar past conduct.'" Green Oil Co. v. Hornsby, 539 So.2d at 223, quoting Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala.1987).
In upholding an award of $100,000 in punitive damages in a retaliatory-discharge case, the Alabama Supreme Court recognized the ignobility of wrongfully depriving *1037 one of his livelihood and noted the "chilling effect" of retaliatory discharges:
"`In order for the beneficent goals of the worker's compensation chapter to be realized, the employee must be able to exercise his right to be compensated for work-related injuries in an unfettered fashion without being subject to reprisal. The fear of being terminated would have a chilling effect on the employee's exercise of a statutory right.'
"McClain [v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299, 1301 (Ala. 1991)].
"In McClain, the Court's discussion of the `chilling effect' of a wrongful termination obviously extends to a chilling effect, not only on the employee who may be in the position to make a claim and thereby risk being terminated, but on others in the defendant's employ. [The employer's] arguments on this issue overlook the potential chilling effect on a potentially large group of employees, and the potential `gain' to [the employer] from having fewer claims filed."
Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993).
In this case, the jury had evidence from which it could conclude that Hood's employment was terminated because he filed a claim for workers' compensation benefits. Hood also presented evidence tending to show that Gold Kist had terminated the employment of at least three other employees after they had filed claims for workers' compensation benefits, resulting in other retaliatory-discharge claims against Gold Kist. As the trial court pointed out in its judgment, because of those other claims the jury in this case could reasonably infer that Gold Kist was aware, or should have been aware, that it was violating the law when it fired Hood. Based on the facts of this case, we conclude that the degree of reprehensibility was high enough to support the punitive-damages award of $95,000.
The second guidepost set out in BMW I instructs us to compare the punitive award to the compensatory award. This is also a Green Oil Co. factor. The punitive award of $95,000 is 19 times the $5,000 compensatory award. In explaining that there is no exact mathematical formula for determining whether an award of punitive damages is excessive, the United States Supreme Court has stated:
"Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.... In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis."
BMW I, 517 U.S. at 582-83, 116 S.Ct. 1589 (citations omitted; emphasis in original).
Hood proved economic damage by showing that he was out of work for 63 days. In its judgment, the trial court noted that Hood's noneconomic loss was hard to measure. For example, it said, in addition to experiencing the emotional distress that accompanies the loss of one's job, Hood presented evidence indicating that his wife left him as a result of his losing his job at Gold Kist. "[S]uch noneconomic harm was apparently hard for the jury to value, and hence, the low compensatory damage award," the trial court wrote.
Moreover, the court noted, there was evidence from which the jury could infer that Gold Kist had engaged in a pattern and practice of firing employees who sought workers' compensation benefits. The jury could have awarded $95,000 in an attempt to deter Gold Kist from similar conduct, the trial court reasoned.
*1038 Under these circumstances, including the relatively low award for compensatory damages, we cannot say that the 19:1 ratio of punitive damages to compensatory damages is excessive. See, e.g., Wal-Mart Stores, Inc. v. Robbins, 719 So.2d 245 (Ala. Civ.App.1998) (upholding punitive-to-compensatory ratio of 19:1); Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524 (Ala. 1997) (upholding ratio of 12:1); Union Security Life Ins. Co. v. Crocker, 709 So.2d 1118 (Ala.1997) (upholding ratio of 68:1).
We also must consider the relationship of the punitive-damages award to the civil or criminal penalties that could be imposed for comparable misconduct. The only sanction available against employers in retaliatory-discharge cases is that imposed by § 25-5-11.1, Ala.Code 1975. Leak Stop, Inc. v. Keenon, 705 So.2d 479 (Ala.Civ.App.1997). Therefore, there is no meaningful comparison that can be made between the punitive-damages award in this case and other sanctions imposed by the legislature. "The absence of any other sanction leads us to conclude that no reduction of the punitive award is warranted under this `guidepost.'" Id.
We cannot say, based on the evidence before us, that the jury's punitive-damages award of $95,000 is excessive when considered under substantive-due-process standards, or that it is plainly and palpably wrong. The evidence supports the judgment of the trial court.
The judgment is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.
THOMPSON, J., concurs in part and dissents in part.
CRAWLEY, Judge, concurring specially.
Although I agree with the statement in Judge Thompson's special writing that the "harassment" Hood suffered at work would not be enough to satisfy the element of oppression or malice required for the imposition of punitive damages, I believe the jury had ample evidence from which it could find that Gold Kist acted with oppression or malicethe testimony of other Gold Kist employees who testified that they were fired after having work-related accidents.
THOMPSON, Judge, concurring in part and dissenting in part.
In order to be entitled to punitive damages, the plaintiff must present clear and convincing evidence indicating that the defendant "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." § 6-11-20(a), Ala.Code 1975. The term "clear and convincing evidence" is defined in § 6-11-20(b)(4):
"Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
I do not believe Hood produced "clear and convincing evidence" indicating that Gold Kist acted with oppression or malice. Hood testified at trial that he was "harassed" upon returning to work; he testified as to a few instances of alleged harassment. He also testified that he felt that his employment was terminated because he had filed a workers' compensation claim. However, on cross-examination, Hood admitted that in his deposition given in this action he had stated that he did not know why he thought he had been terminated in retaliation for filing a workers' compensation claim; he also admitted stating repeatedly during that deposition that he could not remember any specific instances of harassment.
In Dunlop Tire Corp. v. Allen, 725 So.2d 960 (Ala.1998), the employer placed *1039 the previously injured employee in work positions that exceeded the work restrictions assigned to him by his doctor; refused to treat the employee's pain at the company's first-aid facility; suspended the employee without pay; and later terminated the employee. The employee sued, alleging a retaliatory discharge. The jury returned a verdict in favor of the plaintiff employee, awarding compensatory and punitive damages. The Supreme Court of Alabama held that the plaintiff employee had presented evidence to support the jury's compensatory-damages award but had not presented clear and convincing evidence indicating that the defendant employer acted with oppression or malice. Dunlop Tire Corp. v. Allen, supra.
Given that authority, I do not believe the evidence in this case indicates "a high probability as to the correctness of the conclusion" that Gold Kist acted with oppression, fraud, wantonness, or malice. § 6-5-20(a) and (b)(4), Ala.Code 1975; Dunlop Tire Corp. v. Allen, supra. For that reason, I must respectfully dissent from that portion of the opinion affirming the award of punitive damages. Otherwise, I concur.