776 So.2d 792 (2000)
ConAGRA, INC.
v.
Calvert TURNER.
1981614.
Supreme Court of Alabama.
July 7, 2000.
*793 Robert H. Harris and David W. Langston of Harris, Caddell & Shanks, P.C., Decatur, for appellant.
Mitchell K. Shelly and Robert M. Baker of Alexander, Corder, Plunk, Baker, Shelly & Shipman, P.C., Athens, for appellee.
PER CURIAM.
This is a retaliatory-discharge case filed by Calvert Turner against ConAgra, Inc., a feed and flour milling operation with a plant located in Decatur, Alabama. Turner alleged in his complaint that he was terminated by ConAgra for being injured on the job and for seeking workers' compensation benefits. The Legislature has created a statutory cause of action for retaliatory discharge under the Alabama Workers' Compensation Act, § 25-5-11.1, Ala.Code 1975. A jury returned a verdict for Turner against ConAgra and assessed compensatory damages in the amount of $50,000 and punitive damages in the amount of $250,000. ConAgra appeals from this judgment. We affirm.
ConAgra hired Turner as a laborer on September 9, 1997. His duties included unloading the grain barges and cleaning the empty bins and grain elevators. Carroll Tripp, the elevator supervisor, testified that Turner's job required "extremely hard physical labor" and that ConAgra has "a hard time finding people who can work in our elevator situation. We're rough on people."
The record reflects that Turner was a good employee. Carroll Tripp praised his job performance. His immediate supervisor, Frankie Skinner, also testified that Turner was considered a good and diligent *794 employee and that he never saw Turner work in an unsafe manner. The plant manager, Paul Shields, never saw Turner engage in any unsafe conduct.
Turner worked from the date he was hired until he was terminated on January 9, 1998. ConAgra contended at trial that the sole reason it terminated Turner was for failing to work in a safe manner. ConAgra based this contention on three incidents. The first was the bobcat accident. During the unloading of a barge, ConAgra employee Bobby Garrison, who was driving a bobcat, ran over a cable, causing the bobcat he was driving to lean on its side. Turner raced to Garrison's rescue, but as he tried to help Garrison off the machine, it shifted and Turner was pinned between the bobcat and the side of the barge. As a result, Turner sustained injuries to his back, leg, and pelvis. The second incident occurred when Turner and another employee were attempting to unload a railway car full of grain. The process requires an employee to hook one end of a large cable to the railway car, then wrap the opposite end of the cable around a machine with a large spool. Turner's back was injured when the machine and cable jerked him. He testified that he was performing his job exactly as he had been trained. The third incident occurred on January 8, 1998, when Turner sustained another on-the-job injury. The record reflects that Turner reported to work at 2:45 a.m. on a cold morning. A river barge, 200 feet in length and 12 feet in depth, needed to be unloaded. The unloading required two workers to crawl 100 feet through the grain with a 30-pound cable. Another employee, known as the marine operator, was charged with providing the workers with continuous slack on the cable while each worker crawled through the barge. On the day in question, the marine operator failed to provide Turner with continuous cable slack and Turner's back popped while he was pulling the cable. He reported his injury to ConAgra and received medical treatment. The following day ConAgra terminated Turner for allegedly working in an unsafe manner.
ConAgra raises three issues on appeal. First, ConAgra contends that the jury's award of $50,000 in compensatory damages is excessive. However, because ConAgra failed to challenge the excessiveness of the compensatory-damages-award specifically as a ground for a new trial, this issue is procedurally barred. State v. Ferguson, 269 Ala. 44, 45, 110 So.2d 280 (1959) ("[T]he question of the excessiveness of the jury's verdict will not be considered or determined on appeal unless such question is first presented to the lower court which is usually done by a motion for a new trial. The motion must specifically challenge or question the amount of the verdict as being excessive." (Emphasis added.)) See also § 12-22-71, Ala.Code 1975, Peete v. Blackwell, 504 So.2d 222 (Ala.1986), and Feazell v. Campbell, 358 So.2d 1017 (Ala. 1978).
In order to recover punitive damages under the statutory cause of action for retaliatory discharge, the statute requires the employee to prove, by clear and convincing evidence, oppression, fraud, malice or wantonness. § 6-11-20, Ala.Code 1975. ConAgra contends that Turner failed to present evidence that will support a punitive-damages verdict of $250,000 based upon oppression, fraud, malice or wantonness. The trial judge, considering ConAgra's claim of excessiveness found as follows:
"Section 6-11-20, [Ala.Code 1975], prohibits an award of punitive damages unless there is `clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to the plaintiff.' Fraud clearly was not an issue in this case and is not considered by the Court as a basis for the punitive damage award under review. `Wantonness' means `conduct which is carried on with a reckless or conscious disregard of the rights ... of others.' `Oppression' occurs where a person is *795 subjected `to cruel and unjust hardship in conscious disregard of that person's rights.' `Malice' is the intentional doing of a wrongful act without just cause of excuse, either with an intent to injure the person or property of someone else or under such circumstances that an evil intent is implied.
"As between the parties in this case the Plaintiff had a clear legal right not to be terminated by the Defendant because he made one or more worker's compensation claims. § 25-5-11.1, [Ala. Code 1975]. A corollary to this principle is that no employer shall terminate an employee for an untrue reason that is a sham or pretext for an otherwise unlawful termination for making a worker's compensation claim. These rights have been recognized by our Supreme Court as necessary for the beneficent goals of the worker's compensation statute to be realized:
"`[An] employee must be able to exercise his right to be compensated for work-related injuries in an unfettered fashion without being subject to reprisal. The fear of being terminated would have a chilling effect on the employee's exercise of a statutory right.'

Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993), citing McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299, 1300 (Ala.1991).
"The following evidence was before the jury when it considered whether or not the Defendant engaged in wantonness, oppression or malice leading up to or at the time when it terminated the Plaintiff: according to Paul Shields, the Defendant's plant manager who actually fired the Plaintiff, his failure to work safely constituted the sole reason for his termination. Yet, in his deposition and at trial, the Defendant's elevator supervisor, Carroll Tripp testified that the Defendant terminated the Plaintiff due to three on-the-job injuries during the first ninety days of his employment. Although Tripp furnished the plant manager with information that influenced the termination decision, he had no recollection of talking to the Plaintiff's immediate supervisor about what actually occurred when the Plaintiff was first injured in October, 1997. Nor did he know of anything unsafe that the Plaintiff did to cause his injury in December, 1997.
"When the Plaintiff reported his December injury, Tripp told him to take two Advils and discouraged him from going to the doctor. He also discouraged another employee, Allen Gates, from seeking a doctor's treatment of a work-related injury. According to Tripp, he did this to hold down the injury rate and to eliminate the `downside' of a doctor's visit that required a record to be made of an accident or injury at work. He further admitted that the Defendant's employees who visited doctors for on-the-job injuries were subject to discipline.
"Paul Shields reviewed the Plaintiff's personnel file and talked to Tripp before deciding to fire the Plaintiff. He never observed the Plaintiff engaged in unsafe conduct while working for the Defendant. Shields knew of no operational or safety rule that the Plaintiff had violated during his employment. Shields knew no specifics about how the plaintiff was injured in December, 1997. Likewise, he did not know of anything that the Plaintiff did improperly or unsafely on that occasion. Although giving the Plaintiff's failure to work safely as the reason for his termination, Shields did not know how he was performing his cable-pulling job when his injury occurred on January 8, 1998. The plant manager did not discuss the Plaintiffs job performance with his immediate supervisor or co-employees before labeling him as an unsafe worker. Shields conceded that he probably would not hire someone who had been fired for failing to work safely.

*796 "Frankie Skinner, the Plaintiffs immediate supervisor, gave his opinion that the Plaintiff was a good and diligent employee. He had never been reprimanded for unsafe conduct on the job. Skinner could not describe one example of how the plaintiff worked unsafely. He observed nothing unsafe that the Plaintiff did to cause his injuries in October and December, 1997, and on January 8, 1998. Neither Shields nor Tripp said anything to him about unsafe work activities on the Plaintiffs part. But he did hear Tripp tell the Plaintiff after he reported the January 8 injury that he did not need to see a doctor because of a new ninety-day hiring policy.
"Given the foregoing evidence, the jury could have reasonably and fairly concluded that the Plaintiff did not work unsafely while employed by the Defendant, that the Defendant had a policy of discouraging its employees from seeking medical attention from doctors, that the Plaintiff insisted on seeing a doctor following each of his October, 1997, and January, 1998 injuries, that his insistence resulted in recorded worker's compensation claims on these occasion, that Carroll Tripp made plant manager Paul Shields aware of the Plaintiffs injuries resulting in two doctor's visits within the first ninety days of his employment, that Shields terminated the Plaintiff for working unsafely without investigating or acquiring information to substantiate that reason, that the reason given for the Plaintiffs two worker's compensation injuries actually motivated his termination by the defendant, and that Shields knew when he fired the Plaintiff that employers, such as himself, probably would not hire someone who had been terminated from a prior job for failing to work safely.
"The Court finds, therefore, that the evidence supporting the Plaintiffs punitive damages claim, when weighed against the evidence in opposition, could have and did produce in the minds of the jurors a firm conviction, which included a high probability as to the correctness of their conclusion, that the Defendant engaged in conscious, reckless and/or deliberate misconduct by firing the Plaintiff for a damaging pretextual reason and that the Defendant subjected him to cruel and unjust hardship in conscious disregard of his rights. Accordingly, the Defendant's argument that the evidence presented in this case does not support a punitive damages award is without merit."
As stated by the trial judge, the facts clearly support the jury's finding that Turner proved by clear and convincing evidence that ConAgra acted with oppression, malice or wantonness towards him. See Motion Indus., Inc. v. Pate, 678 So.2d 724, 734 (Ala.1996).
We next consider ConAgra's contention that the $250,000 punitive-damages-award is excessive. The trial judge held a Hammond[1] hearing and concluded that the award is not excessive and does not deny ConAgra due process under the circumstances of this case:
"In determining whether the punitive damages award in this case is unconstitutionally excessive, the Court considers the following factors established in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
"(1) Degree of Reprehensibility of the Defendant's Conduct.
"Considered by the United States Supreme Court as the most important guidepost in determining the reasonableness of a punitive damages award, this first factor requires the Court to assess the evidence to assure that the punitive damages award accurately reflects the enormity of the offense. In *797 Green Oil Co., supra, the Alabama Supreme Court ruled that punitive damages should bear a reasonable relationship to the harm that is likely to occur from the Defendant's conduct, as well as the harm that has actually occurred. If the enormity of the actual or likely harm is slight, then the punitive damages should be relatively small. But if the harm is grievous, the damages should be greater.
"The plaintiff introduced evidence that the Defendant terminated him for a pretextual reason to cover up an illegal firing prohibited by § 25-5-11.1, [Ala. Code 1975]. According to Carroll Tripp, the Plaintiff's firing resulted from his three on-the-job injuries during the first ninety days of his employment. The official reason given by Paul Shields was that the Plaintiff had failed to work safely. Neither Tripp nor Shields actually observed the Plaintiff work unsafely. He had received no warnings or reprimands for violating any of the Defendant's safety rules or policies. His immediate supervisor stated that he observed nothing unsafe that the Plaintiff did to cause his injuries. In his opinion, the Plaintiff was a good and diligent worker. Shields based his termination decision merely on an inspection of the Plaintiff's personnel file and conversations with Tripp. The Defendant contends that the Plaintiff's three on-the-job injuries within three months after being hired justified his termination for the reason give by Shields and that his firing had nothing to do with the worker's compensation claims resulting from two of his three injuries.
"The Plaintiff alleged that he suffered lost income and mental anguish as a result of the Defendant's conduct. Paul Shields admitted before the jury that he probably would not hire someone who had been terminated for not working safely. Punitive damages are appropriate to deter the `gravity' of such wrongdoing. By enacting § 25-5-11.1, [Ala. Code 1975], the Legislature expressed sought to prevent the actual harm that occurs when an employee is deprived of his or her livelihood in consequence of seeking worker's compensation benefits. The Plaintiff contends that the actual harm to him in this case was exacerbated by the damaging, pretextual reason given by Shields for his discharge.
"The potential or likely harm resulting from retaliatory discharges also defeats the purpose of § 25-5-11.1, [Ala. Code 1975]. A wrongful discharge, according to our Supreme Court, creates a chilling effect not only upon the employee who is injured and risks termination if he makes a worker's compensation claim, but upon other of the defendant's employees. If the jury believed Carroll Tripp, the Defendant effectively exploited this chilling effect by discouraging injured employees from going to the doctor to hold down injury rates and to avoid the necessity of creating records. He admitted that the Defendant's employees who visited doctors for on-the-job injuries were subject to discipline. The Plaintiff's evidence showed that Tripp discouraged him from seeing the doctor after his December, 1997 injury and that Tripp did the same thing to another employee, Allen Gates.
". . . .
"(2) Ratio of Punitive Damages to the Plaintiff's Actual or Potential Harm.
"This factor requires that the amount of punitive damages must bear a reasonable relationship to the compensatory damages awarded. A high ratio of punitive to compensatory damages may indicate excessiveness, especially if the Defendant's conduct was not particularly reprehensible. However, due process does not require a purely mathematical formula or predetermined ratio.
"In retaliatory discharge cases preceding BMW of North America v. Gore, supra, the Alabama Supreme Court affirmed punitive damages awards having diverse punitive-to-compensatory ratios *798 in the following cases: Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala. 1996), 5.25:1; Heil Co. v. Crowley, 659 So.2d 105 (Ala.1995), 10:1; Lozier Corp., supra, 9:1 (resulting after the Supreme Court reduced the compensatory damage award); Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992), 1:1.22; and Gold Kist, Inc. v. Griffin, 657 So.2d 826 (Ala.1994), 1:1.5.
". . . .
"The jury in the instant case awarded $50,000 in compensatory damages and $250,000 in punitive damages. Considering the nature of the Plaintiff's claim, the Defendant's violation of a clear statutory right and the reprehensibility factor discussed above, the Court concludes that the 5:1 ratio is reasonable under the circumstances in relation to the amount of the compensatory damages awarded.
"(3) Comparable Civil or Criminal Sanctions.
"The parties agree that no civil or criminal sanctions exist that could be imposed against the Defendant for discharging the Plaintiff in violation of § 25-5-11.1, [Ala.Code 1975]. The only remedy is a civil action to recover damages, either compensatory, punitive or both.
"(4) The Financial Gain or Profit to the Defendant From Its Wrongful Conduct.
"This factor provides that the punitive damages should remove any profit realized by the Defendant from its wrongful conduct, so that it experiences a loss. In this case, however, there is no evidence of how profitable, if at all, its termination of the Plaintiff was to the Defendant. The court will not engage in speculation concerning this factor. Therefore, in the absence of such evidence, the Court is left to conclude that the Defendant realized no profit from the Plaintiff's discharge.
"(5) The Financial Position of the Defendant.
"It is undisputed that the Defendant is an international corporation with net income in each of 1997 and 1998 exceeding $500,000,000. It can pay the $250,000 punitive damages award without any significant impact on its financial position.
"(6) The Cost of Litigation
"Neither party has offered any evidence or argument concerning this factor. Consequently, it is not considered by the Court in determining whether or not the punitive damages award in this case is excessive.
"(7) Criminal Penalties Imposed Against the Defendant.
"There is no evidence that the Defendant has been or could be criminally prosecuted for its conduct in this case. As noted above, the parties agree that the legislature has created no criminal sanctions or penalties that apply to the retaliatory discharge of an employee. Therefore, this factor does not apply in mitigation of the punitive damages award.
"After evaluating the foregoing factors, the Court concludes that the jury's award of $250,000 in punitive damages is not excessive and does not deny the Defendant due process under the circumstances of this case. Given the testimony and demeanor at trial of the Defendant's supervisory employees, Tripp and Shields, and the lack of evidence from the Defendant of any safety rules or procedures applicable to the hazardous labor required of the Plaintiff during certain barge unloading activities, the jury acted reasonably and prudently in limiting its punitive damages award to $250,000...."
We have carefully studied the trial judge's discussion of the factors established in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809, (1996), and agree with his conclusions.
*799 For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, COOK, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
LYONS, J., concurs in the judgment affirming the award of compensatory damages and otherwise concurs both in the judgment and the opinion.
HOOPER, C.J., concurs in the result.
HOUSTON and SEE, JJ., concur in part and dissent in part.
LYONS, Justice (concurring in the judgment affirming the award of compensatory damages and otherwise concurring both in the judgment and the opinion).
I cannot agree with the refusal to review the question of excessiveness of the award of compensatory damages, a refusal based on the defendant's failure to renew its motion for a judgment as a matter of law at the close of all the evidence. In B.A.S.S. Coal, Inc. v. Black Warrior Minerals, Inc., 579 So.2d 1325 (Ala.1991), the defendants failed to move either for a new trial or for a judgment notwithstanding the verdict (now a judgment as a matter of law). This Court refused to consider on appeal an argument that the plaintiff had not presented a scintilla of evidence to justify the amount of damages awarded, because of an improper apportioning of damages among breach-of-contract, fraud, and conversion counts.
The issue of excessiveness of compensatory damages is sufficiently preserved when excessiveness is included as a ground in support of a motion for new trial. ITEC, Inc. v. Automated Precision, Inc., 623 So.2d 1139 (Ala.1993). Only a hypertechnical reading of ConAgra's motion for new trial supports the view that it attacks only the sufficiency of the evidence to support an award of any compensatory damages. I would hold that ConAgra's motion marginally satisfies the requirement of including the ground of excessiveness of the verdict for compensatory damages. However, it is not clear from the materials before us that the bases for the grounds here argued (inadequacy of proof of mental anguish, inadequacy of proof of out-of-pocket loss, and insufficient basis for a determination of future damages) were presented to the trial court. A trial judge's order should not be reversed for the judge's failing to heed an argument never made in the trial court. See Goodyear Tire & Rubber Co. v. Vinson, 749 So.2d 393 (Ala.1999) (Lyons, J., concurring specially). However, even if these arguments had been made, I could not say that the jury's verdict awarding compensatory damages should be disturbed.
I concur in all other aspects of the opinion.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur insofar as the Court affirms the award of compensatory damages, and I concur to affirm the punitive award up to $150,000. I dissent insofar as the Court affirms the award of punitive damages in excess of $150,000.
SEE, J., concurs.
NOTES
[1] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).